**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Ramon Morga,<br><br>                                    Petitioner<br><br>        v.<br><br>Jeremy Bean,[1] et al.,<br><br>                                    Respondents | Case No.  2:21-cv-01743-APG-BNW<br><br>**Order**<br><br>[ECF Nos. 4, 33, 36, 39] |

Ramon Morga, a Nevada prisoner, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254.  For the reasons that follow, I deny the petition.

## I.      BACKGROUND

Morga alleges constitutional violations relating to a judgment of conviction in the Eighth Judicial District Court for Clark County, Nevada.  He was found guilty of conspiracy to violate the Uniform Controlled Substances Act and trafficking in a controlled substance. ECF No. 4. Evidence presented at trial established the following facts.  Working as an undercover detective with the Las Vegas Metropolitan Police Department (LVMPD), Anton Gross orchestrated four purchases of methamphetamine with a woman named Veronica Beltran. ECF No. 14-23 at 5-32. All four transactions took place in the parking lot of a Target store. *Id.*  At the first two and the fourth purchases, Beltran herself appeared to sell the methamphetamine. *Id.*  At the third transaction, Beltran asked to send her cousin in her place. *Id*. at 17-18.  Gross assented, and moments later Morga entered Gross's car. *Id*. at 19.  After Morga gave Gross a shopping bag containing the narcotics, Gross handed Morga $1,600. *Id*. at 23-24.  The substance in the

---

[1] The current warden of High Desert State Prison, Jeremy Bean, is substituted for Charles Daniels as the primary respondent in this case. *See* Fed. R. Civ. P. 25(d).

package Morga gave Gross tested positive for the presence of methamphetamine and weighed approximately 106 grams. *Id*. at 71-73.

Morga did not appeal his conviction. He did, however, file a timely petition for post-conviction relief claiming that he received ineffective assistance of counsel (IAC) because his trial counsel failed to preserve his right to a direct appeal. ECF No. 14-32.  The state district court held an evidentiary hearing and denied relief. ECF Nos. 15-40. 15-41.  Morga appealed. ECF No. 15-42.  Finding that the state district court abused its discretion by denying Morga's request for counsel, the Nevada Court of Appeals reversed and remanded the case "for appointment of counsel to assist Morga in the postconviction proceedings, including the filing of a supplemental petition." ECF No. 15-8 at 3-4.

Appointed counsel filed a supplemental petition claiming Morga's factual innocence, alleging trial court error and insufficient evidence to sustain the conviction, and raising several more IAC claims. ECF No. 15-10.  The district court held an evidentiary hearing and again denied relief. ECF Nos. 15-29, 15-37.  Morga appealed. ECF No. 15-30.  The Nevada Court of Appeals affirmed the lower court's denial of the IAC claims and concluded that the remaining claims were procedurally barred because they could have been raised on direct appeal. ECF No. 15-50.

A few months after the conclusion of his state post-conviction proceedings, Morga initiated this federal habeas proceeding by submitting an initial petition (ECF No. 1-1), then shortly thereafter filing an amended petition (ECF No. 4).  Respondents moved to dismiss several claims from the amended petition. ECF No. 13.  I granted the motion in part, finding that Grounds 1, 2, and 3 failed to state a state cognizable claim for federal habeas relief. ECF No. 20. Respondents subsequently filed an answer addressing the merits of Morga's remaining claims.

ECF No. 27.  Despite receiving two extensions of time, Morga did not file a reply within the time I provided him. ECF Nos. 29, 31.  Beginning nearly two months after the time for filing his reply had expired, Morga began filing a series of documents requesting appointment of counsel and seeking to amend his petition. ECF Nos. 33, 34, 39, 40.

## II.   STANDARDS OF REVIEW

This action is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA). The standard of review under AEDPA is set forth at 28 U.S.C. § 2254(d):

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Emil v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 411.

"A federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

"[A] federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable." *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004); *see also Miller-El*, 537 U.S. at 340 ("[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2).").

If the state court's adjudication on the merits of a claim is not entitled to deference under § 2254(d), the federal court conducts a de novo review of the claim. *Kernan v. Hinjosa*, 578 U.S. 412, 413 (2016). Similarly, the federal court reviews a claim de novo if the state courts never

1 reached the merits of the claim. *Pirtle v. Morgan*, 313 F.3d 1160, 1167–68 (9th Cir. 2002).

2 Because de novo is more favorable to the petitioner, federal courts can deny writs of habeas

3 corpus brought under § 2254 by engaging in de novo review rather than applying the deferential

4 AEDPA standard. *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

5 **III.   DISCUSSION**

6      Morga's remaining claims allege that his custody violates his constitutional rights

7 because his trial counsel deprived him of effective assistance of counsel.  To establish a claim of

8 ineffective assistance of counsel, a defendant must show that (1) "counsel made errors so serious

9 that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth

10 Amendment," and (2) counsel's errors "deprive[d] the defendant of a fair trial, a trial whose

11 result is reliable." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

12      Under the first *Strickland* prong, whether an attorney's performance was deficient is

13 judged against an objective standard of reasonableness. *Id*. at 687-88.  Under the second prong, a

14 petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional

15 errors, the result of the proceeding would have been different." *Id*. at 694.  The reviewing court

16 need not consider the performance component before the prejudice component "or even address

17 both components of the inquiry if the defendant makes an insufficient showing on one." *Id*. at

18 697.

19      **A.   Ground 4**

20      In Ground 4, Morga alleges he was provided ineffective assistance of counsel due to his

21 trial counsel's failure to object to a jury instruction that presumed methamphetamine is a

22 schedule I substance. ECF No. 4 at 15-16.  He points to a jury instruction (Instruction No. 10)

23 that included the following language:

1
2
3

> Any person who knowingly and intentionally sells, or is knowingly and intentionally in actual or constructive possession of a Schedule I controlled substance or any mixture which contains a Schedule I substance, the quantity of which weighs, or is represented by that person to weigh, 28 grams or more, is guilty of Trafficking in Controlled Substance.

4   ECF No. 14-25 at 12.  Morga contends no evidence was presented at trial that methamphetamine

5   is a schedule I substance and that it is, in fact, a schedule II substance under Nevada law.[2] *Id*. at

6   9.  Thus, he claims that trial counsel's failure to object to the instruction fell below on objective

7   standard of reasonableness and that it is reasonably probable that the outcome of his trial would

8   have been more favorable had counsel objected to the instruction. *Id*. at 16.

9       The Nevada Court of Appeals rejected this argument in Morga's post-conviction

10  proceeding. ECF No. 15-15 at 3.  After correctly identifying *Strickland* as the governing federal

11  law standard, the court held:

12
13
14
15
16
17

> Morga claimed trial counsel was ineffective for failing to object to jury instruction number 10.  Morga argues the instruction amounted to a directed verdict because it classified methamphetamine as a schedule I controlled substance rather than a schedule II controlled substance.  Methamphetamine is a schedule I controlled substance. NAC 453.510(7); *see also Andrews v. State*, 134 Nev. 95, 96, 412 P.3d 37, 38 (2018) (recognizing methamphetamine is a schedule I controlled substance).  The district court thus properly advised the jurors on the law, and Morga failed to demonstrate trial counsel acted below an objective standard of reasonableness by not objecting to the instruction or a reasonable probability of a different outcome at trial had his counsel objected.  Therefore, we conclude the district court did not err by denying this claim.

18  *Id*. (footnote omitted).

19      Morga's contention that methamphetamine is a schedule II substance is based on a

20  provision in the Nevada Administrative Code (NAC 453.520(4)) and the federal government's

21  schedule II classification of the drug (21 U.S.C. § 812, Schedule II (c)). ECF No. 4 at 9.

22

23

---

[2] Prior to a 2019 amendment, the statute under which Morga was convicted, Nev. Rev. Stat. § 453.3385, did not apply to Schedule II substances. *See* 2019 Nevada Laws Ch. 633 (A.B. 236).

1    However, the classification under NAC 453.520(4) applies only to methamphetamine that is

2    "prepared by a registered chemical or pharmaceutical manufacturer" and "is available for

3    medicinal purposes through a distribution system approved by the Drug Enforcement

4    Administration." NAC 453.520(4).  Otherwise, the provision cited by the Nevada Court of

5    Appeals clearly classifies methamphetamine as a schedule I controlled substance under Nevada

6    law. *See* NAC 453.510(7).  With respect to the federal government's classification, I explained in

7    my order deciding the respondents' motion to dismiss why federal law does not preempt state

8    law on this point. *See* ECF No. 20 at 4.

9           The State proved at trial that the substance Morga handed to Detective Gross contained

10   methamphetamine and weighed at least 28 grams. ECF No. 14-23 at 5-32; ECF No. 15-50 at 3 n.

11   1.  That was sufficient to satisfy the elements of trafficking in a controlled substance. *See* ECF

12   No. 14-25 at 10; *Figueroa-Beltran v. United States*, 467 P.3d 615, 623 (Nev. 2020) (holding that

13   the *identity* of substance is element that must be proven to sustain conviction for possession of

14   controlled substance with intent to sell).  Because methamphetamine's classification as schedule

15   I controlled substance is a matter of law, not a factual issue, the State was not required to prove

16   at trial that it is a schedule I substance.

17          In sum, Instruction No. 10 was a valid jury instruction, and any objection to it would

18   have been futile.  Accordingly, Morga's trial counsel did not perform below the constitutional

19   standard by failing to object to the instruction. *See James v. Borg*, 24 F.3d 20, 27 (9th Cir. 1994)

20   ("Counsel's failure to make a futile motion does not constitute ineffective assistance of

21   counsel.").  Because Morga has not satisfied the performance prong of the *Strickland* test, the

22   state court's rejection of Ground 4 withstands scrutiny under § 2254(d).  Thus, habeas relief

23   "shall not be granted" for the claim. 28 U.S.C. § 2254(d).  Ground 4 is denied.

1        **B.      Ground 5**

2        In Ground 5, Morga alleges he was provided ineffective assistance of counsel due to his

3 counsel's failure to object to the State presenting evidence of the crimes committed by Veronica

4 Beltran that did not involve Morga. ECF No. 4 at 16-18.  As noted above, the State presented

5 evidence of four drug transactions between Detective Gross and Beltran, but that evidence

6 showed that Morga participated in only one of them.  Morga notes that "counsel wanted to

7 minimize [his] role in the other [three] drug sales," but that a more effective strategy would have

8 been to object to any testimony concerning those sales. *Id*. at 17.  He argues that the jury

9 "convicted [him] based on Beltran's extensive drug sales," noting that the prosecutor insinuated

10 in closing arguments, without any supporting evidence, that Morga was Beltran's supplier.[3] *Id*. at

11 18.

12        The Nevada Court of Appeals rejected this claim in Morga's post-conviction proceeding:

13        Morga argued trial counsel was ineffective for referencing his
         coconspirator's unrelated drug transactions.  At the evidentiary hearing on
14        Morga's petition, trial counsel testified his trial strategy was to show Morga's
         coconspirator as the dealer and Morga having little to no knowledge of the
15        transactions.  Morga failed to demonstrate counsel's strategy was objectively
         unreasonable and, thus, that trial counsel's performance was deficient. *See Ford v.*
16       *State*, 105 Nev. 850, 853; 784 P.2d 951, 953 (1989) ("Tactical decisions are
         virtually unchallengeable absent extraordinary circumstances.").  Further, Morga
17       has not demonstrated a reasonable probability of a different outcome at trial,
         because his actions were captured on video.  Therefore, we conclude the district
18       court did not err by denying this claim.

19 ECF No. 15-50, at 3-4.

20

21

─────────────────────────────

22 [3] The petition actually alleges that the insinuation was that Morga was Beltran's "broker," but
   that is likely a misstatement in light of the portion of the closing argument Morga cites. *See* ECF
23 No. 14-24 at 14.  The suggestion that Morga was Beltran's supplier, rather than vice versa, is
   more prejudicial to Morga.  And, as discussed below, Morga cites to the same portion of the
   closing argument to allege that the prosecutor improperly painted Morga as Beltran's supplier.

1    The state court's findings and conclusions are well-supported by the state court record.

2 The video evidence of the transaction between Morga and Detective Gross, was well as the fact

3 that the transaction was witnessed by at least one other detective, left Morga's counsel with few

4 options with respect formulating a defense. *See* ECF No. 15-29 at 20-22.  Thus, counsel

5 attempted to show that Beltran ran a drug enterprise and that Morga's transaction with Detective

6 Gross was an isolated incident. ECF No. 14-22 at 132-33.  While this defense proved

7 unsuccessful, Morga's suggested strategy of objecting to the evidence of the other three Beltran

8 transactions would not have improved his chances at trial.  Morga has not overcome the

9 presumption that counsel's strategy fell "within the wide range of reasonable professional

10 assistance." *See Strickland*, 466 U.S. at 689.  Because the Nevada Court of Appeal's rejection of

11 Ground 5 was not contrary to, or an unreasonable application of, clearly established federal law,

12 nor was it based on an unreasonable determination of the facts in light of the evidence presented

13 in state court, the claim is denied. See 28 U.S.C. § 2254(d).

14    **C.    Ground 6**

15    In Ground 6, Morga alleges he was provided ineffective assistance of counsel due to his

16 trial counsel's failure to adequately challenge the testimony of a detective who provided eye-

17 witness testimony at trial. ECF No. 4 at 18-20.  Detective Eric Ravelo, another LVMPD

18 detective, testified to the following facts.  He was the case agent for the investigation of Veronica

19 Beltran, who he identified as a drug broker with "multiple sources of supply." ECF No. 14-23 at

20 44-45.  While surveilling the third drug transaction involving Beltran, he saw Morga park near

21 Detective Gross's car, get out of his car, and enter the passenger side of Detective Gross's car.

22 *Id*. at 49-50.  Detective Ravelo used the license plate of the car Morga was driving and the

23 nickname Morga called himself in his conversation with Detective Gross (Snoopy) to find a

1   picture of Morga in the police database. *Id*. at 52-53.  Upon seeing the picture, Detective Gross

2   confirmed that Morga was the person who entered his vehicle. *Id*. at 53.  The video taken inside

3   of Detective Gross's car further confirmed the identification of Morga. *Id*.

4          Morga claims that effective counsel would have objected to the testimony about Beltran

5   being a broker with many sources because it was irrelevant and suggested, without any

6   supporting evidence, that Morga was one of her suppliers. ECF No. 4 at 20.  He also faults trial

7   counsel for failing ask any questions to test Detective Ravelo's identification of Morga as the

8   person he saw in the Target parking lot with Detective Gross. *Id*. at 19-20.  Lastly, Morga

9   contends that trial counsel should have objected on hearsay grounds when Detective Ravelo

10  testified that Detective Gross had told him that the suspect referred to himself as "Snoopy." *Id*. at

11  19.

12         Morga did not raise this claim on appeal in his state post-conviction proceeding. ECF No.

13  15-44 at 51.  Thus, he failed to exhaust the remedies available to him in state court. *See Baldwin*

14  *v. Reese*, 541 U.S. 27, 31-32 (2004).  Even so, I am permitted to deny the claim if it is without

15  merit. *See* 28 U.S.C. § 2254(b)(2).

16         With respect to counsel's alleged failure to conduct a more probing cross-examination,

17  Morga offers no evidence to suggest that challenging Detective Ravelo's identification of him

18  would have benefited the defense.  In addition, Morga had an opportunity to question trial

19  counsel on this subject at his post-conviction evidentiary hearing, but failed to do so. ECF No.

20  15-29 at 17-20.  In all likelihood, Detective Ravelo would have only reinforced the strength of

21  the identification evidence on cross-examination.  Moreover, challenging the identification

22  would have been inconsistent with counsel's strategy of conceding that Morga delivered the

23  drugs, but contending that he was just doing Beltran's bidding. *See United States v. Fredman*,

1   390 F.3d 1153, 1154, 1158 (9th Cir. 2004) (recognizing that it was a reasonable defense strategy

2   to admit the defendant cooked methamphetamine but deny he was involved in a conspiracy to

3   manufacture methamphetamine).  Thus, Morga has failed to show that counsel's cross-

4   examination constituted ineffective assistance of counsel.

5          As for counsel's failure to object Detective Ravelo's testimony about Beltran being a

6   broker with many suppliers, the State did not insinuate that Morga was one of those suppliers

7   until its final closing argument. ECF No. 14-24 at 14.  At the time of the testimony, it was

8   reasonable for counsel to assume that the State was simply trying to establish the foundation for

9   why the LVMPD was investigating Beltran.[4]  Trial counsel was not ineffective by failing to

10  anticipate that the State would later suggest that Morga was one of Beltran's suppliers. *See*

11  *Strickland*, 466 U.S. at 689 ("[A] court deciding an actual ineffectiveness claim must judge the

12  reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of

13  the time of counsel's conduct.").

14         Finally, a hearsay objection to Detective Ravelo's testimony about Morga's nickname

15  would have been futile.  The testimony was not offered for the truth of the matter asserted. *See*

16  Nev. Rev. Stat. § 51.035.  Instead, it was offered only to explain how Detective Ravelo was able

17  to produce of picture of Morga from the police database.

18         Trial counsel's handling of Detective Ravelo's testimony did not fall below an objective

19  standard of reasonableness, so Morga fails to meet *Strickland*'s deficient performance prong.

20  Accordingly, Ground 6 is denied based on my de novo review.

21  / / / /

22

23

---

[4] I note that, here again, Morga did not delve into this subject with trial counsel at the state post-conviction hearing. ECF No. 15-29 at 17-20.

1    **D.    Ground 7**

2        In Ground 7, Morga alleges he was provided ineffective assistance of counsel due to his

3    trial counsel's failure to object to the prosecutor's misstatement of evidence in final closing

4    argument. ECF No. 4 at 21.  He contends that effective counsel would have objected when the

5    prosecutor made the following argument:

6           [Beltran] came to that first deal without drugs.  She had to leave and go
            get drugs from someone.  Second deal she showed up, she was fine, she had the
7           drugs.  The third deal she didn't have the drugs, Mr. Morga had the drugs.  Mr.
            Morga was in the parking lot.

8            Use your common sense based upon what she did on the 11th and then
9           March 8th.  She was going to get the drugs from Mr. Morga from the car and take
            them to Detective Gross.

10

11   *Id*. (citing ECF No. 24-14 at 14).  Morga claims that the argument was objectionable because

12   there was no evidence indicating that he was the source of narcotics, rather than being merely a

13   courier. *Id*.  Morga further claims that the argument was prejudicial because the prosecutor

14   portrayed him as the supplier without any supporting evidence.

15       Like Ground 6, Ground 7 was not presented to the Nevada Court of Appeals when Morga

16   appealed the denial of his state post-conviction petition. ECF No. 15-44 at 51.  The omission of

17   the two claims reflects their relative weakness in relation to the claims post-conviction counsel

18   chose to press on appeal.  Be that as it may, Ground 7 fails for the simple reason that the cited

19   argument was not improper.

20       As the Supreme Court of Nevada has noted, "[t]he prosecutor ha[s] a right to comment

21   upon the testimony and to ask the jury to draw inferences from the evidence, and has the right to

22   state fully his views as to what the evidence shows." *State v. Green*, 400 P.2d 766, 767 (Nev.

23   1965).  The court in *Green* further observed that "[i]f the prosecutor's reasoning is faulty, such

12

1  faulty reasoning is subject to the ultimate consideration and determination by the jury." *Id*.  In

2  addition, Morga's counsel had argued in his closing statement that Beltran was the "mastermind"

3  and that Morga merely got "wrapped up in a situation created by her." ECF No. 14-24 at 12-13.

4  Thus, the prosecutor's argument that Morga was the supplier of the drugs was more likely a

5  response to the defense's closing argument rather than an attempt to misrepresent the evidence,

6  as Morga claims.  In any case, Morga cites no authority to support a conclusion that the

7  prosecutor's argument amounted to misconduct that warranted an objection.

8      Trial counsel's failure to object to the prosecutor's final closing argument did not fall

9  below an objective standard of reasonableness, so Morga fails to meet *Strickland*'s deficient

10  performance prong.  Accordingly, Ground 7 is denied based on my de novo review.

11      **E.   Ground 8**

12      In Ground 8, Morga claims that he is entitled to habeas relief due to the cumulative effect

13  of the constitutional errors alleged in his petition. ECF No. 4 at 22-24.  The Nevada Court of

14  Appeals rejected this claim in Morga's post-conviction proceeding:

15          Morga argued the cumulative effect of trial counsel's errors in this case
        warrants reversal.  Even if multiple instances of deficient performance may be

16      cumulated for purposes of demonstrating prejudice, *see McConnell v. State*, 125
        Nev. 243, 259 & n.17, 212 P.3d 307, 318 & n.17 (2009), Morga did not

17      demonstrate any instance of deficient performance to cumulate, *see Morgan v.
        State*, 134 Nev. 200, 201 n.1, 416 P.3d 212, 217 n.1 (2018).  Therefore, we

18      conclude the district court did not err by denying this claim.

19  ECF No. 15-50, at 4.  For the reasons discussed above, I agree with the state court's assessment

20  of Morga's IAC claims.  Thus, I deny Ground 8.

21  **IV.   PENDING MOTIONS**

22      As noted above, Morga filed a series of documents requesting appointment of counsel

23  and seeking to amend his petition well after his reply brief on the merits of his petition was due.

1 First, he filed a motion for appointment of counsel and a document he characterized as a

2 supplemental petition. ECF Nos. 33, 34.  Respondents filed an opposition to the motion and a

3 motion to strike the supplemental petition. ECF No. 35, 36.  Morga subsequently moved for

4 leave to file a supplemental petition. ECF No. 39.

5       Addressing the motion for appointment of counsel first, Morga filed three prior motions

6 asking me to appoint him counsel. ECF Nos. 7, 9, 21.  In denying the third request, I explained

7 that I was not willing to change my previous decision regarding appointment of counsel because

8 Morga had not demonstrated that he is entitled to discovery or an evidentiary hearing,[5] or that his

9 right to due process would be violated if he is not appointed counsel. ECF No. 29.  Morga's

10 renewed motion cites no reason for me to deviate from my prior rulings, so it will be denied.

11       As for Morga's motion for leave to file a supplemental petition, respondents correctly

12 point out that it is actually a motion for leave to amend, rather than supplement, his petition

13 because it is not based on "any transaction, occurrence, or event that happened after the date of

14 the pleading to be supplemented." Fed. R. Civ. P. 15(d).  Under Federal Rule of Civil Procedure

15 15(a)(2), a party may amend a pleading, beyond an initial amendment, with the court's

16 permission.  In deciding whether to grant leave of court to amend, a court may consider: any bad

17 faith, undue delay, or previous amendments on the part of the petitioner; any potential prejudice

18 to the opposing party; and the potential futility of the amended pleading. *In re Morris*, 363 F.3d

19 891, 894 (9th Cir. 2004); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962).

20       With respect to futility, Grounds 1, 3, 4, and 5 of Morga's proposed amendment do not

21 relate back to Morga's pending petition because they do not share a common core of operative

22

23     

---

[5] If an evidentiary hearing is warranted, the court is required to appoint an attorney to represent a petitioner who otherwise qualifies to have counsel appointed under 18 U.S.C. § 3006A. *See* Rule 8(c), Rules Governing Habeas Corpus Cases Under Section 2254.

facts with claims in that petition.  Thus, those grounds are subject to dismissal as untimely. [6] *See*

*Ross v. Williams*, 950 F.3d 1169, 1171 (9th Cir. 2020) (citing *Mayle v. Felix*, 545 U.S. 644, 657-

59 (2005)).  Morga concedes that his other two proposed claims – Ground 2 and Ground 6 –

have not been presented to the state court. ECF No. 40 at 19, 36.  I am not permitted to grant

relief on a claim "unless it appears that . . . the applicant has exhausted the remedies available in

the courts of the State." 28 U.S.C. § 2254(b)(1)(A).  To extent state court remedies are no longer

available due to procedural bars, the claims are technically exhausted, but procedurally defaulted

unless the Morga can show cause and prejudice. *See Cooper v. Neven*, 641 F.3d 322, 327 (9th

Cir. 2011).

　　　In addition, allowing the amendment would result in undue delay and prejudice to the

respondents. *See Griggs v. Pace American Group, Inc.*, 170 F.3d 877, 880 (9th Cir. 1999);

*Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 798 (9th Cir. 1991).  The undue delay is clear from the

discussion above.  It would be unduly prejudicial to Respondents at this late date to require

additional briefing on the issues of timeliness, exhaustion, procedural default, and any excuses

thereto.  Given these circumstances, I deny Morga's request to file an amended petition.

**V.   CONCLUSION**

　　　For the reasons set forth above, Morga's petition for habeas relief and his pending

motions are denied.

**VI.   CERTIFICATE OF APPEALABILITY**

　　　This is a final order adverse to a habeas petitioner.  As such, Rule 11 of the Rules

Governing Section 2254 Cases requires me to issue or deny a certificate of appealability (COA).

---

[6] Also, Ground 4 is not a viable claim in this proceeding because it alleges ineffective assistance of post-conviction counsel. *See* 28 U.S.C. § 2254(i).

Accordingly, I have *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

Under 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *Id.*

Having reviewed my determinations and rulings in adjudicating Morga's petition, I decline to issue a certificate of appealability for my resolution of any procedural issues or any of Morga's habeas claims.

**VII.   ORDER**

I THEREFORE ORDER that Morga's petition for a writ of habeas corpus (ECF No. 4) is DENIED. The Clerk shall enter judgment accordingly and close this case.

I FURTHER ORDER that a certificate of appealability is DENIED.

I FURTHER ORDER that Morga's motions for appointment of counsel (ECF No. 33) and for leave to file an amended petition (ECF No. 39) are DENIED. Respondents' motion to strike (ECF No. 36) is DENIED as moot.

Dated: June 19, 2024

_____
U.S. District Judge Andrew P. Gordon